**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ERIC DICKERSON | : | |
| Plaintiff | : | |
| v | : | Civil Action No. RWT-05-2959 |
| MARK MYER | : | |
| Defendant | : | |

o0o

## MEMORANDUM OPINION

Pending in the above-captioned civil rights action is Defendant's Response to Show Cause, construed as a Motion for Summary Judgment. (Paper No. 7). Plaintiff was advised of his right to file an opposition in response to the motion and has filed a reiteration of his claim that he believes his life is in danger. (Paper No. 10). Upon review of the papers filed, the undersigned finds a hearing in this matter unnecessary. See Local Rule 105.6 (D. Md. 2004).

**Background**

Plaintiff, an inmate at Maryland Correctional Institution in Hagerstown (MCIH), alleges that he is afraid he will be killed by a gang known as the Bloods. (Paper No. 1 at p. 4). He claims that Defendant does not care about the safety of inmates at MCIH. (Id.) He further alleges that he checked into protective custody so that he would not get hurt, but was forced to go back into general population.[1] (Id.) As relief, Plaintiff simply requests measures to insure that he is not killed while in prison. (Id.)

---

[1] Plaintiff was charged with an institutional rule violation for refusing a housing assignment when he was ordered to move from protective custody. (Id. at Attachment).

Upon receipt of Plaintiff's Complaint, the undersigned issued an Order requiring counsel to show cause why Plaintiff's request for injunctive relief should not be granted. (Paper No. 4). In the Response to Show Cause Order, Defendant admits that on July 19, 2005, Plaintiff told prison staff that he feared for his safety because he owed $175.00 to unspecified inmates for tobacco and he did not have a way to pay it back. (Id. at Ex. 1, pp. 2–3). When Plaintiff's segregation status was reviewed by a classification team, he was advised to pay back his debt and the decision was made to continue Plaintiff's assignment to administrative segregation. (Id.). A subsequent review of his status on August 18, 2005, resulted in no change to Plaintiff's classification status. (Id.). At a classification review on September 16, 2005, however, staff advised Plaintiff to pay back his debt because he had the ability to do so and that he would be removed from administrative segregation to a general population housing assignment. (Id.). On September 23, 2005, Plaintiff was ordered to move to a cell in general population and he refused to do so. (Id.). Based on that refusal, Plaintiff received an infraction for which he was found guilty and sentenced to 30 days of segregation. (Id.).

On November 23, 2005, Plaintiff was again interviewed by staff and again refused to provide the names of the inmates to whom he owed money. (Id.). Plaintiff claimed that he only left his cell to eat meals; the tier officer for Plaintiff's housing unit, however, confirmed that he regularly attended outside yard activities. (Id.). As of October 23, 2005, Plaintiff: has been assigned to general population; continues to attend outside yard activities on a regular basis; and has not expressed any concerns regarding his safety to officers assigned to his housing unit. (Id.). Based on these facts, Plaintiff has not been returned to protective custody status. (Id.).

## Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to

any material fact and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  Anderson, 477 U.S. at 250; see also Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987); Morrison v. Nissan Motor Co., 601 F.2d 139, 141 (4th Cir. 1979); Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950).  The moving party bears the burden of showing that there is no genuine issue of material fact.  See Fed. R. Civ. P. 56(c); Pulliam, 810 F.2d at 1286 (citing Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party.  See Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 437 (4th Cir. 1998).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other  facts immaterial."  Celotex, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence.  See Anderson, 477 U.S. at 256.

In Celotex, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file."  Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e)

3

> therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

Celotex, 477 U.S. at 324.  However, "'a mere scintilla of evidence is not enough to create a fact issue.'"  Barwick v. Celotex Corp., 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting Seago v. North Carolina Theatres, Inc., 42 F.R.D. 627, 632 (E.D.N.C. 1966).  There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (citations omitted).

**Analysis**

In order to prevail on a claim that prison officials failed to protect him from the violence of other inmates, Plaintiff must establish that Defendant exhibited deliberate or callous indifference to a specific known risk of harm.  See Pressly v. Hutto, 816 F. 2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency.  Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society."  Farmer v. Brennan, 511 U.S. 825, 833–34 (1994) (citations omitted).  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id at 837.  See also Rich v. Bruce, 129 F. 3d 336, 339–40 (4th Cir. 1997).

In a failure to protect claim, a prisoner must show first that the harm he suffered was

objectively serious, and second that prison officials acted with deliberate indifference. See Farmer, 511 U.S. at 834. In the instant case, where the only relief sought is injunctive in nature, Plaintiff's burden of proof is more substantial:

> "[T]o survive summary judgment, [Plaintiff] must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future."

Id. at 846.

Plaintiff admits that he has refused to provide prison officials with the names of the inmates who are allegedly threatening his life. (Papers No. 6 and 10). In addition, he admits that he does not confine himself to his cell anymore; and he interacts with inmates who are members of the gang that is allegedly threatening him.[2] (Paper No. 10). Plaintiff's refusal to cooperate with efforts to investigate his claim that his life is being threatened, coupled with his current practice of interacting with those whom he claims to fear, weighs heavily against a finding that the alleged risk of harm in this case is objectively intolerable. Plaintiff may feel safer if he were assigned to protective custody. It is not, however, the province of this court to micro-manage prisons. See Bell v. Wolfish, 441 U.S. 520, 547 (1979) ("judgment calls" are for prison officials, not the judicial branch); see also Block v. Rutherford, 468 U.S. 576 (1984) (courts cannot substitute their judgment on institutional administration for that of prison officials). The undersigned declines the opportunity to usurp the classification decisions made in this case by MCIH staff who have based Plaintiff's housing assignment on appropriately-conducted investigations.

---

[2] Plaintiff also claims that the correctional officers are "on the gang's side." (Id.).

Accordingly, Defendant is entitled to summary judgment in his favor. A separate order follows.

Date: 2/16/06

                                              /s/
                                       ROGER W. TITUS
                            UNITED STATES DISTRICT JUDGE